[No. B161477. Second Dist., Div. Four. July 3, 2003.]

FRED L. LIEBERMAN, Plaintiff and Respondent, v.
KCOP TELEVISION, INC., Defendant and Appellant.

158

**COUNSEL**

Davis, Wright & Tremaine, Jean-Paul Jassy and Gary L. Bostwick for Defendant and Appellant.

Zev S. Brooks for Plaintiff and Respondent.

OPINION

**HASTINGS, J.**—Fred Lieberman sued KCOP Television, Inc. (KCOP), for violation of Penal Code section 632 and seeks damages he contends resulted from two secret recordings made in connection with an investigation by KCOP. KCOP broadcast a news report using excerpts from the secret recordings and identifying Lieberman as a doctor who improperly prescribed controlled substances. Lieberman contends that the broadcast ruined his reputation and his professional career. He seeks statutory damages for the improper recordings pursuant to Penal Code section 637.2 and actual damages for lost income and emotional distress.[1]

The trial court denied a SLAPP motion brought by KCOP to strike Lieberman's complaint, concluding that Lieberman had presented sufficient evidence to demonstrate a violation of section 632. KCOP appeals denial of the motion, an appealable order. (Code Civ. Proc., § 425.16, subd. (j).) We agree with the trial court that sufficient evidence was presented to establish a prima facie claim for statutory damages pursuant to section 632.7 and that the motion was properly denied. But we caution that statutory damages recoverable resulting from the surreptitious recordings are not tantamount to damages resulting from the KCOP broadcast.

## BACKGROUND

A violation of section 632 is committed by anyone who "intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio."

On May 21, 2002, Lieberman, filed a verified complaint alleging that appellant KCOP violated section 632 in two separate incidents. It alleges that Lieberman was a licensed physician at the time of the incidents, and on each occasion, an agent or employee of KCOP made an appointment to be seen by Lieberman at his medical clinic for treatment of a medical condition. One, Jessica Uribe, was seen on May 23, 2001, and the other, John Halecky, was seen sometime prior to that date. On each occasion, the employee was accompanied from the waiting room of the clinic into Lieberman's private office by a companion who was not introduced to Lieberman. The door was shut behind them, leaving Halecky and his companion on the one occasion, and Uribe and her companion on the other,

---

[1] All further references will be to the Penal Code unless otherwise stated.

alone with Lieberman. Lieberman's office was equipped as an examining room in which he routinely conducted medical examinations. Although Lieberman had never recorded patient examinations there, and did not expect examinations to be recorded by the patient, the two companions secretly recorded his private consultation with Uribe and Halecky on both audiotape and videotape, without Lieberman's knowledge or consent.

The complaint also alleges that portions of the secret tapes were broadcast on KCOP's evening television news program on May 23, 2001, during a segment entitled, "Caught in the Act," in which it was asserted that Lieberman prescribed Vicodin, a controlled substance, without proper medical examinations, and in which Lieberman was labeled a "drug dealer" and "candy doctor." It is further alleged that *as a result of the broadcast*, Lieberman was ostracized from his "on call" association and later forced to resign from it, depriving him of nearly 500 HMO patients. In addition, many pharmacies refused to fill any of his prescriptions, and his reputation was so permanently tainted by the broadcast that he lost the ability to earn income as a consultant or an expert in litigation. Also, because of the broadcast, Lieberman' s malpractice insurer notified him that it did not intend to renew his policy, St. Vincent Medical Center denied his application for reappointment to its medical staff, and the California Medical Board launched an investigation, culminating in a police raid of Lieberman's clinic in full view of his patients sitting in the waiting room.

Lieberman allowed his medical license to expire on November 1, 2001, because, it is alleged, *the events following the broadcast* caused him so much stress that he could no longer earn a living as a physician, and he was forced to close his practice.

The allegations of the complaint are set forth in a single count, entitled "Violation of Penal Code Section 632." The complaint seeks damages in the statutory amount set out in section 637.2, see *post*, at page 166 et seq., as well as actual damages alleged to be lost income and emotional distress.

On July 15, 2002, KCOP filed a special motion to strike the complaint, or a "SLAPP motion," pursuant to Code of Civil Procedure section 425.16. [2]The motion asserted that section 632 should not be applicable because Lieberman had no expectation of privacy with the extra person involved in each of the consultations. Additionally, citing freedom of the press under the First Amendment, it argued that section 632 should not apply to its newsgathering

---

[2] The statute targets actions known as "strategic lawsuits against public participation" or by the acronym "SLAPP." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85 [124 Cal.Rptr.2d 530, 52 P.3d 703].) Code of Civil Procedure section 425.16 has therefore become known as the anti-SLAPP statute, and motions made pursuant to the statute as, "SLAPP motions."

activities. It also urged that damages resulting from the broadcast must be afforded First Amendment protection and that Lieberman could not demonstrate that the damages alleged were caused by KCOP.

Lieberman opposed the motion with a declaration which supported the substance of the allegations of the complaint. Additionally, he stated that Uribe's companion appeared to be familiar with her and Halecky's companion appeared to be acquainted with him, and he assumed each was the "significant other" of either Ms. Uribe or Mr. Halecky. With regard to each incident he stated: "all parties in the office were present with the knowledge and desire of Ms. Uribe [Mr. Halecky], and no person who was not present in the office could overhear any of the discussions that took place therein."

The trial court denied the special motion to strike on August 7, 2002, finding that the recorded transaction was a "confidential communication" within the context of section 632, despite the presence of the third-party companions. KCOP filed a timely notice of appeal.

## DISCUSSION

At the outset we emphasize that Lieberman has asserted only one cause of action in his complaint: violation of Penal Code section 632. He has not alleged claims for defamation or invasion of privacy resulting from the broadcast.

Code of Civil Procedure section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

On appeal from an order granting or denying a motion pursuant to section 425.16, the appellate court engages in a two-step process, determining first, whether the defendant made a threshold showing that the challenged cause of action is one arising out of acts done in furtherance of the defendant's exercise of a right to petition or free speech under the United States or California Constitution in connection with a public issue, as defined in the statute; and second, whether the plaintiff has demonstrated a probability of prevailing on the claim. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685]; § 425.16, subd. (b)(1), (2).) We independently determine whether a cause of action is based upon activity protected under the statute, and if so, whether the plaintiff has

established a reasonable probability of prevailing. (*Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 456 [125 Cal.Rptr.2d 534].) In doing so, we consider " 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' " (§ 425.16, subd. (b)(2); *Equilon Enterprises v. Consumer Cause, Inc., supra*, 29 Cal.4th at p. 67.)

We turn to the first question of whether Lieberman's complaint qualifies for treatment under section 425.16.

■ Subdivision (e) of that section includes four separate categories of acts which qualify for treatment under the section. The first two categories pertain to statements made in connection with proceedings "before" or "in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." The third category identifies matters of "public interest" addressed in circumstances traditionally protected by the right to freedom of speech; i.e., statements "made in a place open to the public or a public forum in connection with an issue of public interest." Category four provides a catch-all for "any other *conduct* in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Italics added.) The facts here trigger the last two categories.

We are not here faced with a "pure" section 632 claim, i.e., one which alleges only a surreptitious recording and no subsequent disclosure or use of the recording. ■ A section 632 violation is committed the moment a confidential communication is secretly recorded regardless of whether it is subsequently disclosed. (*Friddle v. Epstein* (1993) 16 Cal.App.4th 1649, 1660–1661 [21 Cal.Rptr.2d 85].) Rather, we have two surreptitious recordings which were used in connection with an investigative report by the media. The investigation resulted in the broadcast of "Caught in the Act."

■ Reporting the news is speech subject to the protections of the First Amendment and subject to a motion brought under section 425.16, if the report concerns a public issue or an issue of public interest. (*Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1047, fn. 5 [61 Cal.Rptr.2d 58]; § 425.16, subd. (e).) Major societal ills are issues of public interest. (*M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 629 [107 Cal.Rptr.2d 504].) News reports concerning current criminal activity serve important public interests. (*Briscoe v. Reader's Digest Association, Inc.* (1971) 4 Cal.3d 529, 536 [93 Cal.Rptr. 866, 483 P.2d 34].)

■ The issuance of prescriptions for controlled substances other than for a legitimate medical purpose is a crime, and may be punishable as a felony.

(Health & Saf. Code, § 11153.)[3] "Few problems affecting the health and welfare of our population, particularly our young, cause greater concern than the escalating use of controlled substances." (*United States v. Mendenhall* (1980) 446 U.S. 544, 561 [64 L.Ed.2d 497, 100 S.Ct. 1870] (conc. opn. of Powell, J.).) We have no doubt that the unlawful dispensing of controlled substances is an issue of great public interest.

■ We conclude that the broadcast was an act in furtherance of the appellant's exercise of a constitutional right to free speech in connection with a public issue, as defined in section 425.16. (See *Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th at p. 67; Code Civ. Proc., § 425.16, subds. (b)(1), (2) & (e)(4).)

Quoting *Nicholson v. McClatchy Newspapers* (1986) 177 Cal.App.3d 509 [223 Cal.Rptr. 58], Lieberman contends that the secret *recording* was not an act in furtherance of appellant's right of free speech. He argues that although "the First Amendment protects the ordinary news-gathering techniques of reporters," it does not protect illegal conduct, and the press is not "immune from liability for crimes and torts committed in news gathering activities." (*Id.* at pp. 513, 518.)

To say that lawful newsgathering is an act in furtherance of one's right to free speech, but unlawful newsgathering is not an act in furtherance of one's right to free speech, begs the question. ■ It is not the defendant's burden in bringing a SLAPP motion to establish that the challenged cause of action is constitutionally protected as a matter of law. (*Navellier v. Sletten, supra,* 29 Cal.4th at pp. 94–95; *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 305 [106 Cal.Rptr.2d 906].) Once the defendant shows that the cause of action arose from acts done in furtherance of an exercise of free speech, it becomes the plaintiff's burden to establish that the acts are *not* protected by the First Amendment. (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 94.)

■ We agree that unlawful news*gathering* activity does not enjoy constitutional protection to the same extent as news *reporting* activity. (See *Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 241–242 [74 Cal.Rptr.2d 843, 955 P.2d 469] (*Shulman*).) "The right to speak and publish does not carry with it the unrestrained right to gather information." (*Zemel v. Rusk* (1965) 381 U.S. 1, 17 [14 L.Ed.2d 179, 85 S.Ct. 1271].) "While reporters are not privileged to commit crimes and independent torts in

---

[3] See Health and Safety Code sections 11210 and 11154. It is also cause for discipline. (See Bus. & Prof. Code, §§ 2242, 2238.) Respondent's medical license was revoked, effective August 2, 2002, after failing to contest a California Medical Board accusation alleging the unlawful prescribing of controlled substances.

gathering the news, and the press has no special constitutional right of access to information, 'news gathering is not without its First Amendment protections.' [Citation.]" (*Nicholson v. McClatchy Newspapers, supra,* 177 Cal.App.3d at p. 519, quoting *Branzburg v. Hayes* (1972) 408 U.S. 665, 707 [33 L.Ed.2d 626, 92 S.Ct. 2646].)

Neither the parties nor we have found authority considering the question whether newsgathering is conduct *in furtherance* of the news media's exercise of its right of free speech. ■ Section 425.16, subdivision (a), mandates, however, that the statute be construed broadly, and the statute's reach is not restricted to speech, but expressly applies to *conduct.* (§ 425.16, subd. (e)(4).) Further, that conduct is not limited to the exercise of its right of free speech, but to all conduct *in furtherance* of the exercise of the right of free speech in connection with a public issue. (*Id.*)

*Furtherance* means *helping* to advance, *assisting.* (See Oxford English Dict. Online (2d ed. 1989).) Reporting the news is free speech. (*Braun v. Chronicle Publishing Co., supra,* 52 Cal.App.4th at p. 1047, fn. 5.) Reporting the news usually requires the assistance of newsgathering, which therefore can be construed as undertaken *in furtherance* of the news media's right to free speech. ■ Because the surreptitious recordings here were in aid of and were incorporated into a broadcast in connection of a public issue, we conclude that Lieberman's complaint fell within the scope of section 425.16.

We next must determine whether or not Lieberman met his burden of providing evidence giving rise to a prima facie claim.

Appellant contends that Lieberman may not recover damages for a violation of Penal Code section 632 because he failed to present admissible evidence that his *injuries* were caused by the secret recording, as compared to the broadcast. Our review of the complaint and Lieberman's declaration submitted in opposition to the motion reveals no allegation of damages caused by the secret recordings themselves. Rather, the allegations relate to damages flowing from the broadcast.

At this point we turn to the language of subdivision (a) of section 637.2. It provides: "Any person who has been *injured* by a violation of this chapter may bring an action against the person who committed the violation for the greater of the following amount: [¶] (1) Five thousand dollars ($5,000). [¶] (2) Three times the amount of *actual damages*, if any, sustained by the plaintiff." (Italics added.)

Appellant argues that the terms "injured" and "actual damages" within this statute should be viewed as synonymous. We disagree. As previously noted,

an actionable violation of section 632 occurs the moment the surreptitious recording is made, whether it is disclosed or not. (*Friddle v. Epstein, supra,* 16 Cal.App.4th at 1660–1661.) ■ Subdivision (a) of section 637.2 would not provide for alternative statutory damages of up to $5,000 if the Legislature intended the victim of the secret recording to recover only "actual damages." Thus, to recover statutory damages for violation of section 632, Lieberman was not required to prove actual damages resulting from the recording. He may recover up to $5,000 for each incident. (*Ribas v. Clark* (1985) 38 Cal.3d 355, 365 [212 Cal.Rptr. 143, 696 P.2d 637]; Pen. Code, § 637.2.) But this does not resolve the question of the damages alleged as a result of the broadcast.

■ Penal Code section 632 does not prohibit the disclosure of information gathered in violation of its terms.[4] Given the factual background of this case, we conclude that damages resulting from the *publication* of information otherwise available, but also referenced within the recordings, are not the "actual damages" contemplated within section 637.2. (See *Kimmel v. Goland* (1990) 51 Cal.3d 202, 209–210 [271 Cal.Rptr. 191, 793 P.2d 524]; *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 19, fn. 12 [43 Cal.Rptr.2d 350]; see also, *Ribas v. Clark, supra,* 38 Cal.3d at p. 364.) The "actual damages" referenced must relate directly to the surreptitious recording. For example, Lieberman may have suffered emotional distress or outrage upon discovering that he had been surreptitiously recorded and upon seeing the recording used on the broadcast. A victim of a surreptitious recording may incur legal expenses in attempting to recover the recording. But the damages that Lieberman may have incurred when the KCOP broadcast disclosed that Lieberman was involved in illegal activity did not result from the surreptitious recordings. They resulted from public disclosure that Lieberman may be involved in the improper dispensing of controlled substances. To the extent Lieberman contends the broadcast improper, he may have traditional civil remedies. But no such claims are asserted in this action.

Next, appellant contends that section 632 was not violated because Lieberman had no reasonable expectation of privacy when the recordings were

---

[4] By contrast, the federal wiretap law prohibits disclosure of unlawfully recorded material. (See 18 U.S.C. § 2511.) The United States Supreme Court has held that disclosure of truthful information of public concern may not be prohibited if obtained in a lawful manner, even if obtained from a source that has obtained it unlawfully. (*Bartnicki v. Vopper* (2001) 532 U.S. 514, 528, 534–535 [149 L.Ed.2d 787, 121 S.Ct. 1753].) But the Court left open the "the question 'whether, in cases where information has been acquired *unlawfully* by a newspaper or by a source, government may ever punish not only the unlawful acquisition, but the ensuing publication as well.' [Citation.]" (*Id.* at pp. 528–529, fn. omitted.)

made. ▮ Penal Code section 632 protects only *confidential* communications, and a communication is not confidential when the parties may reasonably expect other persons to overhear it. (See *Sanders v. American Broadcasting Companies* (1999) 20 Cal.4th 907, 924–925 [85 Cal.Rptr.2d 909, 978 P.2d 67] (*Sanders*).) A communication is confidential where a party to the conversation has an objectively reasonable expectation that the conversation is not being overheard *or* recorded. (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 768, 774–775 [117 Cal.Rptr.2d 574, 41 P.3d 575].) Appellant argues that Lieberman had no reasonable expectation of privacy during the secret recording in light of the presence of the companions, who could obviously overhear Lieberman's conversation with the reporters posing as patients.

The statute defines "confidential communication" as including "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." (Pen. Code, § 632, subd. (c).)

Appellant does not challenge Lieberman's showing that he intended the recorded conversation to be confined to the patient and his or her companion, but reasons that since the companion remained silent on each occasion, he or she was not a "party" to the communication.

A "party" to something may be a person who participates in it, or it may be a person who is simply concerned with it. (Webster's Third New Internat. Dict. (1993) p. 1648; Oxford English Dict. Online (2d ed. 1989).) "Overhear" connotes listening without a speaker's knowledge or intent that his speech be heard, as in eavesdropping, which is "to listen secretly to what is said in private." (Webster's, *supra*, pp. 717, 1608.) It follows that one who listens with the speaker's knowledge and intent is involved or interested in a conversation, not an eavesdropper.

We must give effect to the plain meaning of the words of a statute. Resort to extrinsic aids to construe a statute is proper only where its words have no clear, plain meaning. (*Burden v. Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) Appellant refers to the meaning of "party" used in legal proceedings, as set forth in Black's Law Dictionary, but words must be given their ordinary and commonly understood meaning, unless they have a technical meaning and it clearly appears that the Legislature used them in a technical sense. (See *Honegger v. Reclamation Dist. No. 1619* (1961) 190 Cal.App.2d 684, 691 [12 Cal.Rptr. 76].) We reject appellant's

forced definitions. A party to a conversation need not speak, and *overhear* is not synonymous with *hear*.

█ The concept of privacy is relative. (*Sanders, supra*, 20 Cal.4th at p. 916.) Whether a person's expectation of privacy is reasonable may depend on the identity of the person who has been able to observe or hear the subject interaction. (*Id.* at p. 923; *Shulman, supra*, 18 Cal.4th at pp. 233–235.) The presence of others does not necessarily make an expectation of privacy objectively unreasonable, but presents a question of fact for the jury to resolve. (Cf. *Shulman, supra*, 18 Cal.4th at pp. 233–235 [as element of California intrusion tort].)

Lieberman's evidence demonstrates that he expected his communications to be private and did not expect them to be recorded. We conclude that he has satisfied his burden under section 425.16 to present a prima facie case. But we do not resolve issues of credibility in connection with a SLAPP motion. (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 809 [119 Cal.Rptr.2d 108].) It is for the jury to decide whether under the circumstance presented Lieberman could have *reasonably* expected that the communications were private. (See *Sanders, supra*, 20 Cal.4th at p. 926; see also *Coulter v. Bank of America* (1994) 28 Cal.App.4th 923, 929 [33 Cal.Rptr.2d 766].)

Appellant contends that Penal Code section 632 conflicts with the freedoms of speech and press guaranteed by the First Amendment. It quotes from *Sanders, supra*, 20 Cal.4th at pages 922–923, and urges us to create an affirmative defense for section 632, allowing secret recording if " 'justified by the legitimate motive of gathering the news.' [Citation.]" *Sanders* does not compel such a result. There, the California Supreme Court expressly declined to reach any constitutional issue, stating: "As for possible First Amendment defenses, any discussion must await a later case, as no constitutional issue was decided by the lower courts or presented for our review here." (*Sanders, supra*, 20 Cal.4th at p. 923.)

Further, the Court was not discussing Penal Code section 632. The quote relates to a discussion of the common law tort of intrusion, and in particular, the element of that tort requiring the method of intrusion to be highly offensive to a reasonable person, which may be negated by a legitimate newsgathering motive. (See *Sanders, supra*, 20 Cal.4th at pp. 914, 922–923.)

The issue was discussed earlier by the Supreme Court, however, which acknowledged that the media enjoy a degree of favorable treatment under the common law intrusion tort not applicable to a violation of section 632. (*Shulman, supra*, 18 Cal.4th at p. 239.) The Court concluded that the "First

Amendment does not immunize the press from liability for torts or crimes committed in an effort to gather news." (*Shulman, supra,* 18 Cal.4th at pp. 236, 239.)

On the other hand, the Court recognized that both the common law intrusion tort and section 632 "might, under some circumstances, impose an 'impermissible burden' on newsgathering [citation]; [and that] such a burden might be found in a law that, as applied to the press, would result in 'a significant constriction of the flow of news to the public' and thus 'eviscerate [ ]' the freedom of the press. [Citation.]" (*Shulman, supra,* 18 Cal.4th at p. 239.)

The court refused to enunciate a bright-line rule, finding that "[n]o basis exists … for concluding that either section 632 or the intrusion tort places such a burden on the press, either in general or under the circumstances of this case. The conduct of journalism does not depend, as a general matter, on the use of secret devices to record private conversations." (*Shulman, supra,* 18 Cal.4th at p. 239.)

Appellant has not shown that the California Constitution or the United States Constitution requires the creation of a broad affirmative defense based solely upon a legitimate newsgathering motive, and we decline appellant's invitation to do so.

Because appellant has presented a prima facie case demonstrating violation of Penal Code section 632 and the right to recover statutory damages, the trial court did not err in denying the SLAPP motion.

## DISPOSITION

The judgment is affirmed. Each side shall bear its own costs on appeal.

Epstein, Acting P. J., and Curry, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 1, 2003. Kennard, J., was of the opinion that the petition should be granted.