Filed 1/7/14  Cannon v. Bettinger CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SHARON CANNON,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>JOHN S. BETTINGER et al.,<br><br>Defendants and Respondents. | B240443<br><br>(Los Angeles County<br>Super. Ct. No. BC445437) |

APPEAL from an order of the Superior Court of Los Angeles County.  Mark V. Mooney, Judge.  Affirmed.

Law Offices of Khachik Akhkashian and Khachik Akhkashian for Plaintiff and Appellant.

Watkins & Letofsky, Daniel R. Watkins, and Jennie L. Kruempel for Defendants and Respondents.

_____

The litigation history between these parties is extensive, and this appeal is just one in a string of actions brought by Sharon Cannon (appellant) against defendants and respondents John S. Bettinger, DDS; John S. Bettinger, DDS, a professional corporation; Gary R. Harmatz, DDS; The Dentist's Insurance Company (TDIC); the Los Angeles Dental Society (LADS); and the California Dental Association (CDA). In each action, appellant has asserted the same basic claims against respondents arising out of their alleged dispossession of appellant of dental study models. Appellant has yet to prevail, but she does not relent. In this second appeal, she challenges an order granting respondents' special motion to strike her first amended complaint pursuant to Code of Civil Procedure section 425.16,[1] California's anti-SLAPP[2] statute. We agree with the trial court that appellant's claims fall squarely within the scope of the anti-SLAPP statute. Moreover, as we explained in detail in our prior opinion, *Cannon v. Bettinger* (June 9, 2009, B205710) [nonpub. opn.] (*Cannon I*), appellant's claims against respondents are time-barred. Thus, she has failed to demonstrate a probability of prevailing.

Accordingly, we affirm the trial court's order granting respondents' anti-SLAPP motion.

---

[1]    All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2]    SLAPP is an acronym for strategic lawsuit against public participation. (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 813, overruled in part on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 (*Equilon*).)

# FACTUAL AND PROCEDURAL BACKGROUND[3]

*The First Lawsuit; Allegations in the Earlier Action*

As summarized in *Cannon I*, appellant alleged the following: On July 7, 1998, she filed a dental complaint against Dr. Bettinger and his dental corporation with the CDA. Appellant's complaint was later transferred to the LADS. On July 16, 1998, appellant began dental treatment with Earl Smith, DDS, who made dental study models of appellant that day. On or about September 30, 1998, Dr. Smith sent his original study models to CDA and LADS, and he has not had possession of them since that time. On June 11, 1999, LADS issued a written resolution, approved by CDA, finding that Dr. Bettinger's treatment of appellant fell below the standard of care for a dentist practicing in California and that he was to refund the amount paid for appellant's care. (*Cannon I*, *supra*, B205710, p. 2.)

On June 23, 1999, appellant, in propria persona, filed a dental malpractice action against Dr. Bettinger in state court. On June 30, 1999, CDA and LADS closed their case in light of appellant's court action and retained possession of the original study models, which had a diagnostic value of at least $15,275. Appellant designated Dr. Smith as her expert witness in October 2001. Dr. Bettinger's legal counsel was David M. Hillings and his expert witness was Dr. Gary R. Harmatz. A four-day jury trial was conducted between December 16 and 19, 2003, and a judgment was entered in favor of Dr. Bettinger. (*Cannon I*, *supra*, B205710, pp. 2–3.)

---

[3]     Many of the facts are taken from our prior opinion in *Cannon I*; these allegations are repeated in the first amended complaint in the instant action. A copy of the operative pleading in this case, as well as numerous documents critical to our review of the trial court's order, is contained in respondents' motion to augment the record on appeal. Absent respondents' motion, we would have been unable to provide any meaningful review as appellant did not provide us with an adequate record; the clerk's transcript designated by appellant contains only a copy of the order granting respondents' anti-SLAPP motion, notice of entry of that order, and appellant's notice of appeal. (*Brown v. Boren* (1999) 74 Cal.App.4th 1303, 1320–1321.)

During the trial on December 18, 2003, after Dr. Smith had testified and returned to Arizona, Dr. Bettinger, Hillings and TDIC produced their new "last-minute evidence" consisting of Dr. Smith's original study models (appellant's characterization of the evidence). Appellant alleged that that same day, Dr. Bettinger falsely testified that Dr. Smith had sent the original study models to the defense. Appellant claimed that she never gave her consent for any of the respondents to possess the original study models or to use them in defending the malpractice action. Appellant contended that she was denied valuable use of the study models in her dental treatment and in litigating the malpractice case. (*Cannon I*, *supra*, B205710, p. 3.)

On or about January 22, 2004, appellant contacted the peer review coordinator for CDA and LADS to inquire as to how respondents came into possession of the original study models. After reviewing the case file in storage, the coordinator allegedly falsely represented to appellant that LADS had returned the study models to Dr. Smith on or about June 30, 1999, when the matter was closed, but did not provide appellant with written verification or proof that he had received the study models, as appellant requested. (*Cannon I*, *supra*, B205710, p. 3.)

On or about February 8, 2006, appellant allegedly learned the identity of Dr. Bettinger's insurance company, TDIC, when it commenced efforts to collect as a beneficiary of the judgment rendered against appellant. According to the operative pleading, appellant could not with due diligence have discovered the conversion of Dr. Smith's original study models until she learned the identity of Dr. Bettinger's insurer and its close relationship with the other respondents. (*Cannon I*, *supra*, B205710, p. 3.)

*The Second Lawsuit*

Appellant filed the second action on January 22, 2007. She filed the first amended complaint on August 10, 2007, alleging causes of action for conversion, trespass to chattel, fraud, negligent misrepresentation and conspiracy against all respondents, and alleging negligence against CDA and LADS (based upon allegations set forth above). In response to that pleading, the defendants filed a demurrer, a motion to strike portions of

4

the pleading and a special motion to strike. The same day, appellant filed a motion for leave to file an amended complaint. (*Cannon I*, *supra*, B205710, pp. 3–4.)

The trial court sustained the demurrer without leave to amend and entered judgment. (*Cannon I*, *supra*, B205710, p. 4.) Appellant appealed the trial court's judgment and, on June 9, 2009, we affirmed the trial court's order, concluding that all of her causes of action were time-barred. (*Cannon I*, *supra*, B205710, p. 2.)

*The Instant Action*

On September 13, 2010, appellant filed yet another complaint, again alleging conversion, fraud and deceit, and conspiracy, based upon the same set of facts alleged in the 2007 action (alleged dispossession of appellant's study models). On December 20, 2010, respondents filed a demurrer, motion to strike, and an anti-SLAPP motion.

Prior to the hearing on respondents' demurrer, motion to strike, and anti-SLAPP motion, appellant filed a first amended complaint, alleging causes of action for conversion, various statutory claims, conspiracy, breach of fiduciary duty, and fraud. As with prior pleadings, the gravamen of appellant's claims is that respondents dispossessed appellant of her study models.

On September 27, 2011, the trial court granted respondents' special motion to strike appellant's claims for conversion, fraud and deceit, and conspiracy.

On October 27, 2011, respondents filed a special motion to strike the remaining causes of action in appellant's first amended complaint (statutory violations and breach of fiduciary duty). The trial court reasoned: Appellant's "allegations in her first amended complaint arise from [respondents'] activities in the underlying malpractice action and the previous lawsuit filed by [appellant] against these [respondents]; therefore, [respondents] met their burden by showing the conduct complained of is constitutionally protected by the statute. In addition, [appellant] failed to demonstrate a probability of success."

Respondents were later awarded attorney fees and costs.

This appeal timely ensued.

5

## DISCUSSION

I. *Standard of Review*

"We review the trial court's rulings on a SLAPP motion independently under a de novo standard of review. [Citation.]" (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929.)

II. *The Anti-SLAPP Statute*

"A SLAPP is a civil lawsuit that is aimed at preventing citizens from exercising their political rights or punishing those who have done so." (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 21.) "In 1992, out of concern over 'a disturbing increase' in these types of lawsuits, the Legislature enacted section 425.16, the anti-SLAPP statute." (*Ibid.*; see § 425.16, subd. (a).) Section 425.16, subdivision (b)(1) provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." The statute "posits . . . a two-step process for determining whether an action is a SLAPP." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) First, the defendant bringing the special motion to strike must make a prima facie showing that the anti-SLAPP statute applies to the claims that are the subject of the motion. (*Wilcox v. Superior Court*, *supra*, 27 Cal.App.4th at p. 819.) Once a moving defendant has met its burden, the motion will be granted (and the claims stricken) unless the court determines that the plaintiff has established a probability of prevailing on the claim. (*DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 567–568.)

III. *Protected Activity*

We turn first to the question of whether appellant's claims qualify for treatment under section 425.16.

Section 425.16, subdivision (e), provides, in relevant part: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United

6

States or California Constitution in connection with a public issue' includes: . . . (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4).)

"Subdivision (e) of [section 425.16] includes four separate categories of acts which qualify for treatment under the section. . . . Category four provides a catch-all for 'any other *conduct* in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' (Italics added.)" (*Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 164.)

In determining whether a cause of action falls within section 425.16, subdivision (e), we must "focus on 'the substance of' the lawsuit to determine whether it [arises] from [respondents'] protected activities. [Citation.] Thus, it is the principal thrust or gravamen of [appellant's] cause[s] of action that determines whether the anti-SLAP[P] statute applies. [Citation.]" (*Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 413–414 (*Scott*); see also *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1232 ["The statute's definitional focus is not on the form of the plaintiff's cause of action but rather the defendant's activity giving rise to his or her asserted liability and whether that activity constitutes protected speech or petitioning"]; *Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 630.) "'[T]he critical point is whether [appellant's] cause of action itself was *based on* an act in furtherance of [respondents'] right of petition or free speech. [Citations.]' [Citation.]" (*Scott, supra,* at p. 414; see also *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1365, disapproved on other grounds in *Equilon, supra,* 29 Cal.4th at p. 68, fn. 5 ["the [defendant/cross-defendant] must present a prima facie showing that the [plaintiff/cross-complainant's] causes of action arise from acts of the [defendant/cross-defendant] taken to further the [defendant/cross-defendant's] rights of free speech or petition in connection with a public issue"].)

7

Appellant's lawsuit (like the prior ones) rests solely on respondents' alleged activities in the first civil claim for malpractice and the second civil action filed by appellant. Specifically, in the first amended complaint, appellant alleges that respondents deprived her of the use of the study models for "formulating her theory of the malpractice action." She also alleges that she needed the study models "for the purpose[] of supporting her case in chief in prosecuting her claims against Dr. Bettinger." These allegations confirm that appellant's claims in the instant lawsuit are based squarely upon respondents' (albeit allegedly wrongful) petitioning activities.

In urging us to reverse, appellant argues that because her claims are based upon activities that occurred after the underlying dental malpractice action had concluded, the anti-SLAPP statute does not apply. This argument makes no sense. Respondents' allegedly wrongful conduct was the act of dispossessing appellant of her study models; according to appellant's first amended complaint, that alleged misconduct occurred during and as part of the underlying civil proceedings. Appellant has not demonstrated that she was more dispossessed of her property after the alleged destruction of the study models than when she was denied use of them during her prior action against respondents.

She further avers that because the complained of activity was illegal, it is not subject to the anti-SLAPP statute. But, the cases cited by appellant are readily distinguishable. First, respondents here do not admit that they engaged in any illegal activity. (*Paul for Council v. Hanyecz*, *supra*, 85 Cal.App.4th at p. 1367; *Huntingdon Life Sciences, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1246 [if the defendant concedes that the conduct complained of was illegal, the defendant will be unable to make a prima facie showing that the action arises from protected activity within the meaning of section 425.16].) Second, the evidence does not conclusively establish that the assertedly protected activity was illegal as a matter of law. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320.)

8

IV. *Probability of Prevailing*

Because appellant's causes of action are subject to the anti-SLAPP statute, the burden shifted to her to show, through competent, admissible evidence, a probability of success on the merits of her claims in order to defeat respondents' anti-SLAPP motion. (*Evans v. Unkow* (1995) 38 Cal.App.4th 1490, 1496–1498.) She could not, and cannot, do so for the same reasons outlined in *Cannon I*—her claims are time-barred.[4] (*Cannon I*, *supra*, B205710, at pp. 6–13.)

In an effort to circumvent the timeliness issue, appellant asserts that a claim for "loss of use and enjoyment of personal property due to interruption" differs from a claim for "loss of use and enjoyment of personal property due to destruction." Because appellant did not allegedly know until October 2007 that her dental study models had been destroyed, she contends that the instant lawsuit (which was filed before October 2010) is timely.

As set forth above, this issue is a red herring. The alleged misconduct (wrongful dispossession of appellant of her dental study models) occurred years before this lawsuit commenced. That allegedly wrongful conduct is what triggered the statute of limitations (*AmerUS Life Ins. Co. v. Bank of America, N.A.* (2006) 143 Cal.App.4th 631, 639), and appellant directs us to no legal authority that shows otherwise.

Even if she could, we previously disposed of this argument. As set forth in *Cannon I*: "[A]ppellant argues for the first time on appeal that her causes of action did not accrue until on or about October 2007, when respondents' counsel allegedly informed her counsel that the subject models had been destroyed. But even assuming appellant could amend the [first amended complaint] to state this allegation, it does not alter the fact that appellant knew, or should have known, of respondents' allegedly wrongful

---

[4] The first amended complaint in the prior action did not include claims for statutory violations. (*Cannon I*, *supra*, B205710, at p. 3.) The statute of limitations for a cause of action upon a liability created by statute is three years. (Code Civ. Proc., § 338, subd. (a).) For the same reasons we discussed in *Cannon I*, the three-year time bar precludes these claims.

possession of and interference with her use of the original study models as of December 18, 2003. 'The law is too well settled to require any extensive citation of authorities that one may not cure a defect in a complaint by the omission, after earlier disclosure in another pleading, of the defective allegation in a subsequent complaint pertaining to the same cause of action.' (*Muller v. Muller* (1958) 156 Cal.App.2d 623, 625; *Zakaessian v. Zakaessian* (1945) 70 Cal.App.2d 721, 724.) Additionally, appellant filed the instant lawsuit well before October 2007. Certainly she filed the lawsuit believing that she had already been wronged, and she cannot therefore rely on an event after the lawsuit was filed to trigger the limitations period on her causes of action." (*Cannon I*, *supra*, B205710, at p. 8.)

## DISPOSITION

The order granting the anti-SLAPP motion is affirmed. Respondents are entitled to recover attorney fees and costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
    ASHMANN-GERST

We concur:


_____, P. J.
    BOREN


_____, J.*
    FERNS

---

\*    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.