Filed 2/27/15  Silva v. City of Fullerton CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TERESA SILVA,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>CITY OF FULLERTON,<br><br>    Defendant and Appellant. | G049617<br><br>(Super. Ct. No. 30-2013-00652228)<br><br>O P I N I O N |

        Appeal from an order of the Superior Court of Orange County, David Chaffee, Judge.  Affirmed.

        Jones & Mayer, James R. Touchstone, Krista MacNevin Jee and Elena Q. Gerli for Defendant and Appellant.

        The Chang Firm and Randy Chang for Plaintiff and Respondent.

                        *          *          *

The City of Fullerton (city) appeals from the trial court's order denying its motion to strike plaintiff Teresa Silva's complaint against the city as a prohibited strategic lawsuit against public participation (SLAPP). (See Code Civ. Proc. § 425.16 [authorizing strike motions to gain early dismissal of a SLAPP lawsuit or cause of action]; all further statutory references are to this code.) Silva's complaint alleged an equal protection violation and other causes of action to redress the city's selective, groundless, and retaliatory enforcement of its housing code.

The city asserts that because Silva mentioned in her complaint conversations and correspondence involving city code enforcement personnel, her complaint triggers the anti-SLAPP statute because it targets the rights of city personnel to free speech and petition. Not so. Most acts are accompanied by speech, but that does not transform speech into the target when someone complains about an act. Here, Silva plainly targeted as the gravamen of her complaint the city's allegedly illegal *conduct* in selectively enforcing baseless claims of a housing violation for a retaliatory motive. City actions, not words, formed the basis of her complaint. Whatever words were spoken by, to, or among city personnel, Silva sued only when the city actually took enforcement *action* against her, which she challenged as unfounded, selective, and retaliatory. A city right of free speech or petition had nothing to do with her claims. The city's motion was wholly without merit and we therefore affirm the trial court's ruling.

I

FACTUAL AND PROCEDURAL BACKGROUND

The parties' dispute centers on a "granny flat" or additional dwelling unit constructed over Silva's garage before she purchased her home. The trial court summarized the pertinent facts and proceedings in its minute order, as follows: "In or about 1948, someone constructed a conventional wood-framed living quarter ('unit') above the garage located at [Silva's address] in the City of Fullerton . . . . Although City records have been lost, Silva contends that Page 13 of Exhibit 'A' to her declaration is a

2

permit issued for the unit. [¶] In 1980, the City inspected the premises with regard to a prior owner's application to construct a spa. [¶] In 1981, the City inspected electrical work performed at the premises, including work for the benefit of the unit. [¶] In 1990, Silva purchased the premises as is. Later that same year, the City inspected the premises with regard to Silva's application to establish separate utility lines for the unit. [¶] In March of 2008, the City issue Silva a permit to replace plumbing in the unit."

"In October of 2008, Silva and then-tenant Gregory Garcia ('tenant Garcia') got into a disagreement over utility expenses. Silva threatened to evict [Garcia]; Garcia threatened to report Silva to City code enforcement officers. According to Silva, Garcia claimed to have 'connections' within the department. [¶] On or about 10/22/08 — 'following receipt of a citizen complaint' . . . City of Fullerton Code Enforcement Officer Leeana Garcia ('CEO Garcia') drove by the premises and took pictures of the unit."

'On or about 10/23/08, Silva caused to be served on tenant Garcia a 30-day Notice to Quit for failing to pay utilities. [¶] On 10/27/08, CEO Garcia served Silva by mail with a notice of violation for the unit. [¶] On 10/30/08, CEO Garcia served Silva by mail with a virtually identical second notice of violation for the unit. [¶] On 11/12/08, CEO Garcia served Silva by mail with a virtually identical third notice of violation for the unit."

"On 03/12/09, CEO Garcia issued Silva an administrative citation for the unit. Silva lost her administrative appeal. [¶] Silva's subsequent application for a conditional use permit was denied. [¶] On 03/04/10, CEO Garcia issued an administrative citation for the unit. Silva filed a renewed application for a conditional use permit, the status of which is unknown (but presumably denied). [¶] At present, the unit still remains at the premises, but is reportedly not being rented/occupied."

"Plaintiff has five causes of action as follows: [¶] (1) Equal Protection under the 14th Amendment; [¶] (2) Intentional Interference with Economic Advantage;

3

[¶] (3) Intentional Infliction of Emotional Distress; [¶] (4) Negligence; and [¶] (5) Negligent Infliction of Emotional Distress[.] [¶] Each cause of action relates to plaintiff's ongoing dispute with the City over the habitability [*sic*: legality] of a rental unit constructed above plaintiff's garage. Plaintiff contends that she has a de facto permit (grandfather or estoppels) and/or the City is denying her Equal Protection by unfairly singling her out for enforcement" among a multitude of owners with similar units.

"Defendant City moves to specially strike all claims, contending that it is being sued for 'statements made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law' and/or 'statements made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law.' CCP § 425.16(e)(1) and (2)."

At the hearing on the city's motion, the trial court expressed concern about the city's application in parallel proceedings for a receivership not just for the unit above Silva's garage, but her home as well. Observing that an anti-SLAPP motion is not a substitute for a demurrer or summary judgment motion and accordingly summarizing the case in the light most favorable to the complaint, the court addressed the city's attorney: "Mr. Bettenhausen, [Garcia] gets kicked out, says if you do this to me, don't let me stay here rent free, I'm going to fix your wagon because I have friends at City Hall. Lo and behold, people from City Hall show up and put the hammer to Ms. Silva. And now the city wants to put a receiver[ship —] not only into receiving the garage unit but the whole house and even allow the personal property in the house to be sold off. [¶] What's wrong with this picture, Mr. Bettenhausen?"

Focusing on its anti-SLAPP motion, the city argued that because the matter presumably was initiated by Garcia's communications with code enforcement officers, and those personnel in turn communicated among themselves and with Silva, leading to the administrative citations and proceedings, Silva's complaint implicated those administrative proceedings and the right of city personnel to free speech.

4

The trial court rejected the notion the true goal of Silva's lawsuit fell within the anti-SLAPP act by targeting free speech or the right of petition before governmental agencies. The court concluded Silva's aim was to seek redress for her claim the city engaged in a selective, illegal, and retaliatory "pattern and practice" of code enforcement despite her actual or de facto permit for the garage unit. After rejecting the receivership, the court observed: "[T]urning to the anti-SLAPP motion, the special motion to strike, in a very sad sense, I think this motion is more about seeking attorney fees instead of following what I think is the proper and lawful course, which is to demur[] and file motions for summary judgment/summary adjudication. And that may be the right of the city to pursue, but the argument — the court of appeal may or may not agree with me, but the argument basically is that no residents of any city in California may ever sue that city when it allegedly acts to selectively and improperly enforce code requirements, and instead engages in a pattern and practice of enforcement depending upon connections of certain people with City Hall. [¶] This court is not going to allow — not going to prevent citizens from seeking legal redress for the kinds of *activities* alleged, not proven, just alleged by this citizen. The anti-SLAPP provisions were not designed or intended to protect governmental agencies from improper *activity*." (Italics added.) The trial court denied the anti-SLAPP motion, and the city now appeals.

II

DISCUSSION

A SLAPP suit is a meritless lawsuit that aims to punish a defendant for exercising the constitutional right to free speech or to petition for the redress of grievances. The SLAPP plaintiff seeks to "'deplete "the defendant's energy" and drain "his or her resources"'" by forcing a litigant to defend a meritless lawsuit. (*Hecimovich v. Encinal School Parent Teacher Organization* (2012) 203 Cal.App.4th 450, 463.) The anti-SLAPP statute (§ 425.16) therefore establishes a strike motion procedure that enables a trial court to evaluate a lawsuit's merits at an early stage and end a SLAPP suit

5

without great cost to the defendant. (*Hecimovich*, *supra*, at p. 463; *Tamkin v. CBS Broadcasting, Inc.* (2011) 193 Cal.App.4th 133, 142.)

Specifically, section 425.16 provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

The statute requires a court to engage in a two-step process: "'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected [petitioning or speech] activity.... If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citations.]" (*Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1360.) "Only when a defendant shows that a cause of action is based on protected conduct and the plaintiff fails to show a likelihood of success on that claim is it subject to dismissal." (*Ibid*.)

On appeal, "[w]e independently determine whether a cause of action is based upon activity protected under the statute, and if so, whether the plaintiff has established a reasonable probability of prevailing." (*Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 163–164.) Here the city does not satisfy the first prong of establishing protected activity, and we therefore proceed no further.

The city points to protected activity in "[t]he allegations that give rise to the Complaint," including the following: "a *complaint to City* by Silva's former tenant, Greg Garcia, regarding an unpermitted Second Floor Unit; *conversations* with Code Enforcement Officer Leeana Garcia and Building Official and Code Enforcement Manager Kirke Warren regarding the violations at the Second Floor Unit; *conversations* between Officer Garcia and Respondent's tenants regarding the violations at the

6

Property; *sending correspondence* from the City's Planning Department to Silva regarding a [Conditional Use Permit] application; *serving a notice* of violation relating to the code violations at the Property to Silva; the City's alleged failure to investigate and enforce code violations at neighboring properties *following Silva's complaints*; and the alleged failure to train and supervise employees in nondiscriminatory enforcement of the City's code." (Italics added.)

The city rests its notion of protected activity on a "but for" theory of causality. The city claims: "But for the City's protected activity, Silva's present claims would have no basis. Nearly all of the activities that Silva complains the City took fall squarely under the protections of the anti-SLAPP law, as they are acts in furtherance of the City's right of petition or free speech under the United States or California Constitution in connection with a public issue, i.e., written and oral statements made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law."

While administrative proceedings are covered by anti-SLAPP protection (*Premier Medical Management Systems, Inc. v. California Insurance Guarantee Assn.* (2006) 136 Cal.App.4th 464, 474), the conversations and correspondence the city identifies as instances of free speech and petition were not made in or in connection with the administrative proceedings adjudicating the citations the city issued Silva. Rather, those instances were evidence of what Silva claims was the city's illegal enforcement actions singling her out in a retaliatory manner for harassment despite her lawful permit for her unit. Fundamentally, the city misunderstands the difference between evidence related to liability and liability based on speech or petitioning activity.

"In deciding whether an action is a SLAPP (strategic lawsuit against public participation) the trial court should distinguish between (1) speech or petitioning activity that is *mere evidence* related to liability and (2) liability that is based on petitioning activity." (*Graffiti Protective Coating, Inc. v. City of Pico Rivera* (2010)

7

181 Cal.App.4th 1207, 1215-1216 (*Graffiti*), italics added.) As the *Graffiti* court explained, "Prelitigation communications or prior litigation may provide *evidentiary support for* the complaint without being a basis of liability. An anti-SLAPP motion should be granted if liability is *based on* speech or petitioning activity *itself*." (*Id.* at p. 1216, italics added.)

Here, the aim and gravamen of Silva's complaint was not to impose a gag order on city personnel, but to stop the city's allegedly illegal enforcement measures. "[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." (*Martinez v. Metabolife International, Inc.* (2003) 113 Cal.App.4th 181, 188.) So it is here. The trial court did not err.

III

DISPOSITION

The trial court's order denying the city's anti-SLAPP motion is affirmed. Silva did not move for an award of attorney fees for a frivolous appeal of a strike motion (see § 425.16, subd. (c)), so no fees are considered or awarded. Silva is entitled to her costs on appeal.

ARONSON, J.

WE CONCUR:


O'LEARY, P. J.


MOORE, J.

8