[No. B227322. Second Dist., Div. Five. Nov. 28, 2011.]

TOPAZ SUMMERFIELD et al., Plaintiffs and Respondents, v.
DONALD C. RANDOLPH et al., Defendants and Appellants.

**COUNSEL**

Randolph & Associates, Donald C. Randolph; Bostwick & Jassy and Gary L. Bostwick for Defendants and Appellants.

Law Offices of Jay R. Stein, Jay R. Stein; Pircher, Nichols & Meeks and James L. Goldman for Plaintiffs and Respondents.

**OPINION**

**KRIEGLER, J.**—An attorney provided an affidavit for his client to submit to a foreign court. The result in the foreign court could have influenced the determination of issues pending in a California court. The foreign court denied the application. Plaintiff amended the complaint to allege a cause of action against the attorney and his law firm for malicious prosecution based on the affidavit. The attorney filed a special motion to strike under the anti-SLAPP statute,[1] Code of Civil Procedure section 425.16.[2] The trial court denied the motion on the ground that filing an affidavit in a foreign court is not an act in furtherance of the right of petition or free speech under the United States or California Constitution. We hold that the attorney's affidavit, which was filed in a foreign court in order to influence the determination of

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.' " (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1 [3 Cal.Rptr.3d 636, 74 P.3d 737].)

[2] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

issues pending in a California court, qualifies for protection under the anti-SLAPP statute as a writing made in connection with an issue under consideration by a judicial body. Plaintiff failed to show a probability of prevailing on her malicious prosecution claim. Therefore, we reverse the order denying the motion to strike with directions.

## FACTS AND PROCEDURAL BACKGROUND

*Underlying Proceedings in Zimbabwe and Los Angeles*

Plaintiff and respondent Topaz Summerfield[3] was raised in Zimbabwe. She moved to Los Angeles in 1987, but each year she returned to Zimbabwe to visit her parents. In January 2002, her sister Jacaranda Summerfield and her former brother-in-law Edward Galante were embroiled in contentious divorce proceedings. Jacaranda removed all of the property from the marital residence with her parents' assistance and stored it in various locations, including her parents' home. On January 8, 2002, without informing Galante, Jacaranda left Zimbabwe with their children and relocated to Northern California.

On January 22, 2002, Topaz arrived in Zimbabwe with her two-year-old daughter Sable Summerfield for their annual visit. Galante discovered the marital property was no longer at the marital residence. Galante obtained a writ of arrest against Topaz and her parents by alleging that Topaz and her parents assisted Jacaranda in removing Galante's property, had possession of valuable items, and intended to flee Zimbabwe. Topaz was arrested at her parents' home and stayed overnight in a Zimbabwe prison with Sable. She relinquished her passport and return airline ticket to Galante in exchange for her release.

On March 18, 2002, Topaz and her parents filed an affidavit opposing the writ of arrest. The Summerfield parents returned some of the property to Galante and Jacaranda provided information about the disposition of the remaining property. In August 2002, Galante filed an answering affidavit. In December 2002, after a contested hearing, the Zimbabwe court issued a final order in the writ of arrest case. The Zimbabwe court found in pertinent part: "[Galante] failed, in his papers, to show that [Topaz] had anything to do with the removal of property from [the marital residence]. All he could say was [Topaz] travelled to Zimbabwe, for reasons not clear to him but which he believes relate to the divorce between him and his wife. He did not establish

---

[3] Because multiple parties share the surname Summerfield, we refer to them by their first names for convenience and not out of disrespect or familiarity.

a basis for such belief. Her only 'crime,' as was submitted by [her] counsel, was to arrive in the country for her annual holiday on the same day that her sister departed for the USA. I therefore find no basis to confirm the order in respect of [Topaz]." The Zimbabwe court concluded that the order was moot as to the Summerfield parents due to the subsequent acts and information concerning the property. The court discharged the writ of arrest, entered judgment against Galante, and ordered him to pay the costs of Topaz and her parents. Topaz and Sable returned to California.

On February 27, 2003, Topaz filed a complaint against Galante in Los Angeles on behalf of herself and Sable. A jury trial was held in September 2005 on causes of action for false arrest with warrant, false imprisonment, malicious prosecution, abuse of process, and intentional infliction of emotional distress. Galante was represented by attorney Donald Randolph and his law firm Randolph & Associates (collectively Randolph) in the Los Angeles proceedings.

The trial court determined as a matter of law, based on the final order in the Zimbabwe writ of arrest case and the evidence presented at trial, there was no probable cause for the writ of arrest issued against Topaz. The court's determination simplified the issues remaining for the jury. After deliberation, the jury found in favor of Galante as to all causes of action. Topaz appealed from the judgment. In October 2007, this court found that the jury's verdict was internally inconsistent and not supported by substantial evidence as to the causes of action for false arrest, false imprisonment, and malicious prosecution. The judgment was reversed and remanded for a new trial as to those causes of action.

On April 23, 2009, Galante filed an application in the Zimbabwe court for permission to appeal from the final judgment in the writ of arrest case. The application was supported by several affidavits, including one from Randolph. Randolph explained the proceedings in Los Angeles. He stated two reasons for Galante's belated appeal: (1) Galante's Zimbabwe counsel had not anticipated the interpretation of the Zimbabwe order under California law and (2) new evidence in the California case established Topaz's culpability in aiding and abetting her parents' possession and concealment of Galante's property.

As to the interpretation of the judgment, Randolph declared, "In the [Los Angeles case, Topaz] now argues that their claims for false arrest and imprisonment are <u>automatically</u> meritorious, <u>as a matter of law</u>, solely due to the fact that the [Zimbabwe] Judgment invalidated the provisional order which authorized the arrest and imprisonment of Topaz Summerfield. [T]his

is an argument that, in 2003, Galante's Zimbabwe counsel would not have anticipated or understood."

With respect to new evidence, Randolph noted that the Zimbabwe court discharged the writ of arrest against Topaz based solely on evidence that she did not remove Galante's property. Randolph argued that Topaz's testimony during the Los Angeles trial established that she was involved, however, in the possession and concealment of the property from the sheriff and Galante. Topaz testified that she was living at her parents' residence during the month of February 2002. When her parents were not home, she was the adult in charge of the property. Topaz was present on four occasions when the deputy sheriff searched the house. She was aware that the deputy sheriff was looking for certain property, including paintings. Topaz also knew Jacaranda had stored paintings in the house. Topaz had seen paintings in the house. She did not know which paintings they were and did not match them to the paintings on the deputy sheriff's list, but she presumed they were paintings that the deputy sheriff was looking for. After the deputy sheriff left the house, the paintings were still there. Topaz discussed the paintings with her parents, but never suggested calling the sheriff to turn over the paintings. Topaz had planned to drive to South Africa with her parents at one point, but their plans changed.

Randolph argued that this testimony showed Topaz was in possession of the house and had custody and control over items located at the residence. He declared that the testimony constituted new evidence establishing Topaz's culpability which could not have been presented earlier to the Zimbabwe court.[4]

Topaz's attorney requested that Galante withdraw his application in the Zimbabwe court. Topaz's attorney threatened to hold Randolph personally responsible for continuation of the writ of appeal action. Randolph did not respond, and Galante continued to prosecute the Zimbabwe case. Topaz filed an opposition in Zimbabwe, including a declaration from her attorney in the Los Angeles case, and Galante filed a reply. No oral argument took place. On February 19, 2010, the Zimbabwe court denied Galante's application and awarded attorney fees and litigation costs incurred to Topaz.

---

[4] We note that the trial court in Los Angeles heard the evidence on this issue, including Topaz's testimony, and found no probable cause for the writ of arrest. Our opinion in the previous appeal in this case states, "The trial court determined, based on the final judgment of the Zimbabwe court and the record at trial, that the writ of arrest was invalid and should not have been issued."

*Allegations of the Amendment*

On April 12, 2010, Topaz filed an amendment to her complaint in Los Angeles adding a cause of action against Randolph for malicious prosecution based on the following allegations. She had consistently argued in the Los Angeles proceedings that Galante was collaterally estopped from contesting the findings of the Zimbabwe court. Randolph knowingly misrepresented the history and status of the proceedings in Los Angeles in his affidavit "for the purpose of assisting Galante in connection with his baseless application to file a late appeal in the Arrest Case and, in particular, to attempt to put Galante in a position to undermine Plaintiffs' claims in this case and to argue that the final judgment in the Arrest Case does not collaterally estop Galante in this case on the issues of whether he caused Plaintiffs to be wrongfully arrested and whether he had probable cause to have them arrested." Randolph's conduct amounted to joining a conspiracy to deprive Topaz of her rights and cause her mental anguish by continuing to prosecute the arrest case. As a result of the conspiracy and Randolph's conduct in furthering the continued · malicious prosecution of the writ of arrest case, Topaz was damaged in excess of $1 million.

*The Anti-SLAPP Motion and Supporting Evidence*

On May 27, 2010, Randolph filed an anti-SLAPP motion on the ground that Topaz's malicious prosecution claim arose from an act in furtherance of his right of petition or free speech in connection with a public issue. Specifically, Randolph argued that his conduct constituted a protected activity under two of the four categories set forth in the anti-SLAPP statute: it was a written statement made before a judicial proceeding protected under section 425.16, subdivision (e)(1), and a written statement made in connection with an issue under consideration or review by a judicial body protected under section 425.16, subdivision (e)(2). In addition, he argued that Topaz could not prevail on her claim, because he was not actively involved in the writ of arrest action, he had reasonable grounds to support Galante's application, and Topaz could not show any harm, because the Zimbabwe court ordered Galante to pay her costs.

In support of the motion, Randolph submitted Galante's declaration. Galante declared that he did not timely appeal the Zimbabwe order because he did not have sufficient evidence and the property issues were moot. However, he decided to seek leave to appeal the Zimbabwe order in 2008 based on the opinion of this court and Topaz's trial testimony regarding the property. His sole reason for seeking leave to appeal the Zimbabwe judgment was to substantially increase his chance of defeating the claims against him in

the Los Angeles case. He declared that attorneys in Zimbabwe assisted him in filing the application before the Zimbabwe court.

Randolph submitted a copy of his affidavit that had been filed in support of Galante's application for leave to file an appeal. He also submitted a new declaration in which he declared that he did not bring the writ of arrest action in Zimbabwe, was never counsel of record in the arrest action, and did not continue the arrest action in any way. He did not initiate either of Galante's applications to the Zimbabwe court for leave to file an appeal. He did not direct or continue the applications, did not instruct anyone as to how to proceed with the applications, and was not counsel of record. He prepared two affidavits in support of Galante's application: one that was filed with the application and one that was filed with Galante's reply. Randolph signed both affidavits in Los Angeles County and had them notarized in Los Angeles County as well. His affidavits contain his understanding and opinions as to the facts, circumstances and arguments that took place in the Los Angeles action, including Topaz's trial testimony. He submitted affidavits in support of Galante's application because he had the necessary knowledge and information to explain the delay. The sole purpose of his affidavits was to increase the probability that the Zimbabwe court would grant Galante's application, which would be highly beneficial to Galante in the Los Angeles action. All of Topaz's claims and theories of liability against Galante are contingent upon the viability and legitimacy of the Zimbabwe judgment, which discharged the provisional order allowing for Topaz's arrest and imprisonment. If the Zimbabwe court granted the application, Galante could appeal the Zimbabwe order, which was the primary support for Topaz's claims. Topaz could not continue her case in Los Angeles if the Zimbabwe case was reopened and her claims would no longer be viable if Galante overturned the Zimbabwe order.

*Subsequent Proceedings*

Topaz opposed the anti-SLAPP motion based on the holding in *Guessous v. Chrome Hearts, LLC* (2009) 179 Cal.App.4th 1177 [102 Cal.Rptr.3d 214] (*Guessous*). The *Guessous* court held that filing an action in a foreign country is not a protected activity under the United States or California Constitution, and therefore, the anti-SLAPP statute does not apply to petitioning activity in a foreign country. (179 Cal.App.4th at p. 1186.) Randolph filed a reply on the ground that his actions were in furtherance of his client's right of petition in the pending Los Angeles case. He argued that the holding of *Guessous* was distinguishable, because none of the conduct at issue in that case related to litigation pending in the United States. He noted that Topaz had failed to dispute that the malicious prosecution claim against Randolph was legally deficient and unsupported by evidence. After a hearing, the trial court relied

on the holding in *Guessous* to deny the motion to strike on July 29, 2010. Randolph filed a timely notice of appeal.

## DISCUSSION

*Standard of Review*

Section 425.16 is to be construed broadly. (§ 425.16, subd. (a).) The trial court engages in a two-step process to determine whether to grant or deny a section 425.16 motion to strike. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 [124 Cal.Rptr.2d 530, 52 P.3d 703] (*Navellier*).) The court first decides whether the defendant has made a threshold showing that the acts at issue arose from protected activity. (§ 425.16, subd. (b)(1); *Navellier, supra,* at p. 88.) Once the defendant meets this burden, then the court determines whether the plaintiff has demonstrated a probability that he or she will prevail on the claim. (§ 425.16, subd. (b)(1); *Navallier, supra,* at p. 88.) On appeal, we independently review whether section 425.16 applies and whether the plaintiff has a probability of prevailing on the merits. (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 999 [113 Cal.Rptr.2d 625]; *Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 163–164 [1 Cal.Rptr.3d 536].)

*Protected Activity*

Randolph contends the affidavits that he signed, which were submitted to the Zimbabwe court as part of Galante's application to file a late appeal, were acts in furtherance of his right to free speech and Galante's right to petition the Los Angeles court under the Constitutions of the United States and California as provided under the anti-SLAPP statute. We agree.

Section 425.16, subdivision (b)(1), provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

"As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other

official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e).)

■ We conclude that Topaz's malicious prosecution cause of action against Randolph is subject to a special motion to strike under the plain, unambiguous language of the anti-SLAPP statute. An " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes . . . *any* written or oral statement or writing made in connection with an issue under consideration . . . by a . . . . judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e), italics added.)  ■  Topaz's cause of action against Randolph is based upon his written statements made in connection with issues under consideration by judicial bodies. Specifically, Randolph made written statements to the Zimbabwe court to influence the determination of issues pending in the Los Angeles case. The affidavits, which contained statements about the effect of the Zimbabwe order in the Los Angeles case and the facts supporting probable cause for the writ of arrest, were made in connection with issues under consideration in the Los Angeles case. Galante had no reason to file affidavits in Zimbabwe except to influence the judicial proceedings in the Los Angeles case. The Zimbabwe court had declared the writ of arrest proceeding moot as to the Summerfield parents, because Galante's property issues had been resolved. Therefore, the action was clearly moot as to Topaz as well.

■ We note that section 425.16, subdivision (e) (2), "has been held to protect statements to persons who are not parties or potential parties to litigation, provided such statements are made 'in connection with' pending or anticipated litigation. (E.g., [*Contemporary Services Corp. v. Staff Pro Inc.* (2007)] 152 Cal.App.4th [1043,] 1055 [61 Cal.Rptr.3d 434] [e-mail to customers accusing competitor of litigation-related misconduct]; *Healy* [*v. Tuscany Hills Landscape & Recreation Corp.* (2006)] 137 Cal.App.4th [1,] 5–6 [39 Cal.Rptr.3d 547] [letter from homeowners association to nonparty association members]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 784 [54 Cal.Rptr.2d 830] [letter to celebrity participants in charitable recording preparatory to lodging complaint with state Attorney General]; *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 821–822 [33 Cal.Rptr.2d 446] [statements to nonparties soliciting contributions to litigation fund], disapproved on another ground in *Equilon Enterprises v. Consumer Cause, Inc.* [(2002)] 29 Cal.4th [53,] 68, fn. 5 [124 Cal.Rptr.2d 507, 52 P.3d 685].)" (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1270 [73 Cal.Rptr.3d 383].)

Topaz's reliance on *Guessous, supra*, 179 Cal.App.4th 1177 is misplaced. In *Guessous*, the plaintiff's action was based on the defendant's petitioning activity in a foreign court. None of the issues presented to the foreign court were under consideration in an official proceeding in the United States. The *Guessous* court did not have reason to consider whether a statement made in a foreign court could be protected under the anti-SLAPP statute as a statement made in connection with an issue under consideration by a judicial body in the United States.

*Probability of Prevailing*

Topaz made no showing in the trial court as to her probability of prevailing on the merits of her malicious prosecution claim against Randolph. On appeal, she contends the affidavits, in light of the entire record in this case, are sufficient to demonstrate a probability of prevailing. We disagree.

To establish a claim against Randolph for malicious prosecution, Topaz must plead and prove that the Zimbabwe action " '(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [Topaz's favor] [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 676 [34 Cal.Rptr.2d 386, 881 P.2d 1083].)

" '[C]ontinuing to prosecute a lawsuit discovered to lack probable cause' may also support a claim of malicious prosecution. [Citation.] 'Continuing an action one discovers to be baseless harms the defendant and burdens the court system just as much as initiating an action known to be baseless from the outset.' [Citation.] 'A person who had no part in the commencement of the action, but who participated in it at a later time, may be held liable for malicious prosecution.' [Citations.]" (*Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1398 [69 Cal.Rptr.3d 561].)

There is no evidence in this case that Galante's application to file a late appeal, which included Randolph's affidavits, was brought without probable cause. Topaz's testimony in the Los Angeles trial was not available when the Zimbabwe court considered the application for a writ of arrest. Topaz has not cited any Zimbabwe law governing writs of arrest or appeal procedures. No false statement is apparent from the face of the affidavits. Topaz's argument in the Los Angeles proceedings that Galante is collaterally estopped from challenging the findings of the Zimbabwe court is not the same as an argument that the Zimbabwe court's findings require holding Galante liable for the tort of false arrest with warrant as a matter of law. No probability of prevailing has been shown. The motion to strike the cause of action against Randolph should have been granted.

## DISPOSITION

The order denying the motion to strike pursuant to section 425.16 is reversed. The trial court is directed to enter a new and different order granting the motion to strike. Appellants Donald Randolph and Randolph & Associates are awarded their costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied December 16, 2011, and respondents' petition for review by the Supreme Court was denied February 22, 2012, S199014.