Filed 10/23/23  Stage v. Unruly Agency CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| SARAH STAGE,<br><br>        Plaintiff, Cross-defendant and Appellant,<br><br>        v.<br><br>UNRULY AGENCY, LLC,<br><br>        Defendant, Cross-Complainant and Respondent. | B320840<br><br>(Los Angeles County Super. Ct. No. 22STCV06689) |

APPEAL from an order of the Superior Court of Los Angeles County, Bruce G. Iwasaki, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Mills Sadat Dowlat, Camron Dowlatshahi and Brigitte Mills for Plaintiff, Cross-defendant and Appellant.

Grand Park Law Group and Armand J. Jaafari for Defendant, Cross-complainant and Respondent.

_____

Plaintiff, cross-defendant, and appellant Sarah Stage hired defendant, cross-complainant, and respondent Unruly Agency, LLC (Unruly) to manage an account she had on a social media platform. Their relationship soon soured, with Stage accusing Unruly of demanding she post sexually explicit content, and Unruly claiming Stage benefited from its services without sharing her profits from Unruly's work on her behalf. Stage sued Unruly for, among other causes of action, breach of contract, breach of implied covenant of good faith and fair dealing, and unfair competition.

Unruly filed a cross-complaint leveling five claims against Stage. Pursuant to Code of Civil Procedure[1] section 425.16, the Strategic Lawsuit Against Public Participation (anti-SLAPP) statute, Stage filed a special motion to strike three of these cross-claims, to wit, Unruly's cross-claims for breach of contract, breach of implied covenant of good faith and fair dealing, and intentional interference with contractual relations. Stage appeals from the trial court's order denying her motion.

We hold that the anti-SLAPP statute applies to Unruly's cross-claim for intentional interference with contractual relations because it arises from statements Stage made to other models and social media influencers in connection with an issue under consideration by a judicial body. The cross-claim thus comes within the purview of section 425.16, subdivision (e)(2). In so holding, we acknowledge that in the trial court, Stage relied on a different subdivision of the anti-SLAPP statute—section 425.16, subdivision (e)(4)—to support her motion. We nonetheless

---

[1] Undesignated statutory citations are to the Code of Civil Procedure.

exercise our discretion to consider whether her statements arise from speech protected by section 425.16, subdivision (e)(2) because (1) whether Stage's statements fall within the purview of the anti-SLAPP statute is an issue of law; (2) on appeal, Stage fully briefed the issue; and (3) Unruly had the opportunity on appeal to respond but failed to address that basis for anti-SLAPP protection at all in its briefing.

Next, we reject Unruly's argument that Stage's statements constitute commercial speech that is exempt from anti-SLAPP protection. We also hold that Unruly cannot show a probability of prevailing on its intentional interference with contractual relations cross-claim because Stage's statements are protected by the litigation privilege. Finally, Stage has abandoned her anti-SLAPP attack on Unruly's cross-claims for breach of contract and breach of implied covenant of good faith and fair dealing.

We thus reverse the trial court's order denying Stage's motion to strike Unruly's cross-claim for intentional interference with contractual relations but affirm the order as to Unruly's contract-based cross-claims for breach of contract and breach of implied covenant of good faith and fair dealing.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

Unruly describes itself as "a boutique marketing company," and claims that "[s]ocial media influencers retain Unruly to

---

[2] Our Factual and Procedural Background is derived in part from undisputed aspects of the trial court's ruling and admissions made by the parties in their filings. (See *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340, 349, fn. 2 [utilizing the summary of facts provided in the trial court's ruling]; *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 [" '[B]riefs and argument . . . are reliable indications of a

promote the content their influencers produce, network that content across multiple internet platforms, build and grow their brands, and monetize their public appeal." Stage identifies herself as "a professional model, actress, and certified personal trainer who earns a living producing lifestyle content on social media."

In August 2020, Stage and Unruly entered into an agreement that called for Unruly to manage Stage's account on a social media platform called "OnlyFans." Several months later, Stage decided to terminate her relationship with Unruly. Stage asserts that "[w]ithin days of starting their relationship, Unruly began pressuring [her] to produce vulgar content and effectively shifted all resources and management away from her when she refused to cater to [Unruly's] demands." Conversely, Unruly maintains that *Stage* had asked Unruly to assist her in producing "highly sexual content . . . ." Unruly further asserts that "Stage effectively garnered [a] sizeable consumer audience from Unruly's services[ and] then migrated them to her own personal website, which effectively cut-out [Unruly's] claim to the profits."

On February 23, 2022, Stage filed a complaint against Unruly and its alleged owners (Tara Niknejad and Nicky Gathrite),[3] wherein Stage asserted nine causes of action: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) intentional misrepresentation, (4) negligent misrepresentation, (5) misappropriation of name and likeness,

party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "].)

[3] Stage and Unruly are the only parties to this appeal.

4

(6) intentional infliction of emotional distress, (7) negligent interference with prospective economic advantage, (8) unfair competition, and (9) declaratory relief.

Two days later, Unruly filed a cross-complaint asserting five causes of action against Stage: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) intentional misrepresentation, (4) negligent misrepresentation, and (5) intentional interference with contractual relations.[4] The fifth cross-claim "alleges that Unruly represents a 'significant number of influential social media figures,' introduced Stage to a number of 'its models' through projects and events, and that Stage 'intentionally made fabricated statements about [Unruly] to its models to intentionally disrupt the economic relationship for [Unruly].' "

Stage moved to strike Unruly's first, second, and fifth cross-claims under the anti-SLAPP statute, arguing that these claims arise out of speech protected by section 425.16, subdivision (e)(4). In support of her motion, Stage submitted a declaration in which she claimed to have had conversations with certain models and influencers Stage believed had worked with Unruly in order to determine whether they could testify on her behalf.[5]

On April 19, 2022, the trial court heard and denied Stage's motion because "Stage's alleged speech and conduct do not involve a public issue or an issue of public interest" for the

---

[4] As we explain in footnote 10, *post*, we identify Unruly's fifth cause of action as a claim of intentional interference with contractual relations even though the pleading does not so style this cause of action.

[5] We describe Stage's declaration in further detail in Discussion, part A.2, *post*.

5

purpose of section 425.16, subdivision (e)(4).  The court further observed, "Although Stage's declaration alludes to telling other models about her lawsuit against Unruly, Stage d[id] not argue that such communications were made in a judicial proceeding, in connection with an issue under consideration by a legislative, executive or judicial body, or in a public forum in connection with an issue of public interest" such that subdivision(e)(1), (e)(2), or (e)(3) could have applied to her speech.  Because the court found that Stage "failed to meet her threshold burden of showing that the challenged causes of action arise from protected activity," the court did not "consider whether . . . Unruly ha[d] demonstrated a probability of prevailing on its claims."

The trial court also remarked in its April 19, 2022 order that "Stage's motion to strike appear[ed] to be frivolous," and the court announced its "tentative view . . . that an award of costs and reasonable attorney's fees against Stage may be appropriate."  The court then directed Unruly to file a motion for attorney fees and costs, and set a briefing schedule and hearing.

On April 28, 2022, Stage timely appealed the order denying her special motion to strike.[6]  On May 3, 2022, the trial court took the hearing on Unruly's motion for attorney fees and costs off calendar "[i]n light of the pending appeal . . . ."  Unruly

---

[6] The grant or denial of an anti-SLAPP motion is an appealable order.  (See § 425.16, subd. (i) ["An order granting or denying a special motion to strike shall be appealable under Section 904.1."]; § 904.1, subd. (a)(13) ["An appeal . . . may be taken from any of the following: [¶] . . . [¶] From an order granting or denying a special motion to strike under Section 425.16."].)

6

asserts, and Stage does not dispute, that the court "issued a stay on all matters" after Stage filed her notice of appeal.[7]

## APPLICABLE LAW

The anti-SLAPP statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (§ 425.16, subd. (b)(1).)

For the purposes of the anti-SLAPP statute, the phrase " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection

_____

[7] (See *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 (*Rudick*) [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"]; see also *Direct Shopping Network, LLC v. James* (2012) 206 Cal.App.4th 1551, 1557, fn. 2 ["An appeal of an order granting or denying an anti-SLAPP motion stays all further proceedings on the merits of the affected causes of action."].)

with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Resolution of an anti-SLAPP motion involves a two-pronged procedure. (*Litinsky v. Kaplan* (2019) 40 Cal.App.5th 970, 979 (*Litinsky*).) "First, the [movant] must show . . . 'that the challenged cause of action is one arising from protected activity' " " ' "by demonstrating that the act underlying the . . . cause fits [within] one of the categories spelled out in section 425.16, subdivision (e)." ' [Citation.] If the [movant] makes that showing, the burden shifts to the [nonmovant] to 'demonstrate[ ] a probability of prevailing on' the merits of their cause. [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute . . . is . . . subject to being stricken.' [Citation.]" (See *Bowen v. Lin* (2022) 80 Cal.App.5th 155, 160 (*Bowen*).) "In deciding whether the initial 'arising from' requirement is met, a court considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.' [Citation.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, quoting § 425.16, subd. (b)(2).)

If the movant discharges his or her burden vis-à-vis the first prong, then "the 'burden shifts to the [nonmovant] to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated.' [Citation.] Without resolving evidentiary conflicts, the court determines 'whether the [nonmovant's] showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment.' [Citation.] . . . [T]he second step of the anti-SLAPP process 'establishes a procedure where the trial court evaluates

the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.' [Citation.]" (*Litinsky*, *supra*, 40 Cal.App.5th at pp. 979–980.)

" 'We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity.' [Citation.]" (*Li v. Jin* (2022) 83 Cal.App.5th 481, 490.) Likewise, "we independently review . . . whether the plaintiff has a probability of prevailing on the merits." (*Summerfield v. Randolph* (2011) 201 Cal.App.4th 127, 135.)

## DISCUSSION

On appeal, Stage argues that Unruly's fifth cross-claim arises from her protected activity under section 425.16, subdivision (e)(2), and that Unruly cannot establish a probability of prevailing on this cross-claim because the claim is subject to the litigation privilege set forth in Civil Code section 47. We agree with Stage on both points. In so holding, we exercise our discretion to consider Stage's argument based on section 425.16, subdivision (e)(2) even though she did not raise it below, but instead relied on subdivision (e)(4). Accordingly, we do not address the parties' competing contentions regarding whether Stage's statements could also be within the purview of section 425.16, subdivision (e)(4). Additionally, we reject Unruly's argument that Stage's statements constitute commercial speech exempted from protection of the anti-SLAPP statute. Lastly, Stage abandoned her appeal of the trial court's

9

order denying her motion to strike Unruly's first and second contractual cross-claims.[8]

## A.    Unruly's Fifth Cross-Claim Arises From Stage's Protected Activity

*1.    We exercise our discretion to consider Stage's arguments based on section 425.16, subdivision (e)(2) even though she failed to raise those arguments below because they present pure issues of law, Unruly does not assert prejudice or that the arguments are unmeritorious, and addressing this question will further judicial economy*

In her opening appellate brief, Stage contends Unruly's fifth cross-claim arises from activity protected by section 425.16, subdivision (e)(2).  Stage acknowledges she did not raise this argument below but asks us to consider it nonetheless.  In its appellate briefing, Unruly does not address section 425.16, subdivision (e)(2) on its merits or claim Stage forfeited reliance on that subdivision by not arguing it below.

---

[8] In her opening and reply briefs, Stage asks us to "remand for proceedings consistent with [this] opinion, *including a motion for fees*."  (Italics added.)  Stage provides no legal authority to support her request that we instruct the trial court to permit her to move for attorney fees.  Accordingly, we decline to address her request further.  (See *Inyo Citizens for Better Planning v. Inyo County Bd. of Supervisors* (2009) 180 Cal.App.4th 1, 14 ["We do not serve as 'backup appellate counsel[.]' "].)  We express no opinion on whether Stage may move for attorney fees upon remand or how the trial court should rule on such a motion.

We acknowledge that " 'the failure to preserve a point below' " " '[o]rdinarily' " " 'constitutes a [forfeiture] of th[at] point. [Citation.] . . . .' [Citation.]" (See *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 698, third bracketed insertion added.) "[A]pplication of the forfeiture rule 'is not automatic. [Citation.] . . . ' [Citation.]" (*In re D'Anthony D.* (2014) 230 Cal.App.4th 292, 298, fn. 2.) " 'When an appellant raises a question of law, for example, the appellate court can exercise its discretion to address the issue.' [Citation.]" (*Ibid.*)

We exercise our discretion to consider Stage's argument that Unruly's fifth cross-claim arises from activity protected by section 425.16, subdivision (e)(2). First, whether this subdivision applies is a "legal question[ ] which we review independently on appeal." (See *Gallimore v. State Farm Fire & Casualty Ins. Co.* (2002) 102 Cal.App.4th 1388, 1396–1397.) Second, Unruly does not claim it would suffer any prejudice if we addressed Stage's argument; indeed, Unruly ignores this subdivision altogether in its appellate briefing. Lastly, resolving this question would not disrupt the trial court proceedings, given that the court stayed them after Stage filed her notice of appeal. (Factual & Procedural Background, *ante*.) In addition, considering the issue would narrow the claims upon remand and thus serve judicial economy. (See Disposition, *post* [instructing the trial court to issue an order striking Unruly's fifth cross-claim]; see also *People v. Butler* (2003) 31 Cal.4th 1119, 1128 ["[J]udicial economy is a principal rationale of the forfeiture doctrine."].)**9**

---

**9** In exercising our discretion to decide whether section 425.16, subdivision (e)(2) protects Stage's statements, we

11

### 2. *Unruly's fifth cross-claim arises from Stage's conversations with other models and influencers*

"At th[e] first step [of the anti-SLAPP analysis], courts are to 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.]" (See *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).) Accordingly, our task is to identify which alleged actions undertaken by Stage give rise to her liability on Unruly's fifth cross-claim for intentional interference with contractual relations.[10] As explained below, this cause of action is predicated on discussions that Stage had with other models and influencers that she described in her declaration.

"In order to state a cause of action for intentional interference with contract, a plaintiff must show: '(1) a valid contract between plaintiff and a third party; (2) defendant's

---

do not intend any criticism of the trial court's consideration of Stage's motion.

[10] Although the first page of Unruly's cross-complaint identifies the fifth cross-claim as "intentional interference with prospective economic advantage" (boldface & capitalization omitted), and the body of the cross-complaint labels this cause of action as "intentional interference with economic relations" (boldface, underscoring, & some capitalization omitted), Unruly refers to this cause of action as "intentional interference with contractual relations" in its respondent's brief. (Fn. omitted.) Because Stage does not dispute this point in her reply brief, we assume for the purposes of this appeal that Unruly's fifth cross-claim is a cause of action for intentional interference with contractual relations. (See *Rudick*, *supra*, 41 Cal.App.5th at pp. 89–90.)

knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.' [Citations.]" (*Winchester Mystery House, LLC v. Global Asylum, Inc.* (2012) 210 Cal.App.4th 579, 596.)

In its cross-complaint, Unruly avers that Stage "intentionally made fabricated statements about [Unruly] to its models to intentionally disrupt the economic relationship for [Unruly]." Unruly acknowledges on appeal that "the cross-complaint itself fails to specify any particular speech or act of interference" on Stage's part.

The vagueness of Unruly's pleading, however, does not preclude Stage from establishing that the cause of action arises from protected activity. "[W]e do not evaluate the first prong of the anti-SLAPP test solely through the lens of a plaintiff's cause of action." (*Stewart v. Rolling Stone LLC* (2010) 181 Cal.App.4th 664, 679.) Rather, we may assess "the parties' evidentiary submissions" to determine whether they "provide more clarity" as to the alleged misconduct upon which liability is premised. (See *Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303, 315.)

In her March 23, 2022 declaration, Stage attested, "In the past several years, I have communicated with other models and influencers that I believe worked at one point with Unruly. I did so to gauge whether these models and influencers had experiences with Unruly that were similar to mine and could testify in my support." She further declared, "In certain of those conversations, I informed such individuals of my experience with Unruly. I explained that I was unhappy with their services, including that Unruly made me feel uncomfortable, and that

13

Unruly would not release me from my contract. I also explained that I was involved in a lawsuit against Unruly." Stage insisted she "never suggested, instructed, or attempted to convince any individual to terminate his or her contract with Unruly."[11]

During the proceedings below, the trial court tacitly concluded this cause of action is based on the conversations Stage described in her declaration. Specifically, the trial court remarked in its ruling that "the alleged harm arises from personal communications concerning a private business relationship." In particular, the court noted Stage had declared "she told [others she believed were Unruly clients] she personally felt unhappy and uncomfortable as a client of Unruly, and wanted to end her contract, but did not urge anyone else to terminate their contracts." Furthermore, the court analyzed whether the conversations Stage described in her declaration were protected under section 425.16, subdivision (e)(4), an analysis that would have been unnecessary if Unruly's fifth cause of action were not predicated on those conversations. (See *Bonni*, *supra*, 11 Cal.5th at p. 1009.) We presume the court correctly found that Unruly's intentional interference claim arises from the speech identified in Stage's declaration. (See *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 803 [" '[T]he general rule [is] that trial court rulings are presumed correct.' "].)

Unruly apparently suggests that its fifth cross-claim for intentional interference with contractual relations is instead based on some other unspecified alleged misconduct. Upon

---

[11] Although Unruly filed objections to certain evidence Stage had submitted in support of her motion, Unruly did not object to the admissibility of Stage's declaration.

14

asserting that the conversations identified in Stage's declaration "contribute[ ] nothing to any public issue or discourse," Unruly states, "Thus, it is implausible for Stage to argue that the statements she declares to have made is the conduct from which Unruly's claim arises from [*sic*]." Unruly then intimates, without any further clarification or supporting analysis, that this cause of action does not "arise from" the events described in Stage's declaration because those discussions "merely provide[ ] evidentiary support or context for the claim," "[a] claim does not 'arise from' protected activity simply because it was filed after, or because of, protected activity," and "th[is alleged] protected activity [does not] 'supply elements of the challenged claim.' "

" ' "Although it is the appellant's task to show error, there is a corresponding obligation on the part of the respondent to aid the appellate court in sustaining the judgment." ' " (*In re D.N.* (2020) 56 Cal.App.5th 741, 767 (*D.N.*).) Unruly thus has an obligation to demonstrate that its fifth cause of action is not based on the conversations Stage referenced in her declaration. Had Unruly discharged that burden, we potentially would have had to consider whether only part of Unruly's cross-claim should have been stricken. (See *Bonni*, *supra*, 11 Cal.5th at pp. 1010–1012 ["[C]ourts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected . . . . [¶] . . . [¶] . . . [T]o the extent any acts are unprotected, the claims based on those acts will survive."].) Because Unruly fails to argue cogently that this cause of action arises from any other alleged misconduct perpetrated by Stage, we need not consider this contention further. (See *D.N.*, at p. 767 [holding that a respondent waived an appellate argument by

failing to clearly raise that point in its briefing]; cf. *Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1259–1261 & fn. 4 (*Neville*) [analyzing whether a letter constituted protected activity, even though the cross-complaint did not reference the correspondence, because the cross-complainant did "not dispute that his claims against [the cross-defendant] ar[ose] entirely from the Letter"].)

> 3. *Stage's conversations with other models and influencers satisfy section 425.16, subdivision (e)(2)'s definition of protected activity*

Section 425.16, subdivision (e)(2) provides that an " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: . . . any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ." (§ 425.16, subd. (e)(2).)

"[A] statement is 'in connection with' litigation under section 425.16, subdivision (e)(2) if it relates to the substantive issues in the litigation and is directed to persons having some interest in the litigation." (*Neville, supra,* 160 Cal.App.4th at p. 1266.) Furthermore, "[a]lthough one could read the language of section 425.16, subdivision (e)(2) to allude to pending litigation by referring to 'an issue under consideration or review by a . . . judicial body,' our Supreme Court has said, ' "[j]ust as communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], . . . such statements are equally entitled to the benefits

16

of section 425.16." ' [Citations.]  This position reflects that 'courts have adopted "a fairly expansive view of what constitutes litigation-related activities within the scope of section 425.16." [Citation.]' [Citation.]  Accordingly, although litigation may not have commenced, if a statement 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration" ' [citation] then the statement may be petitioning activity protected by section 425.16."  (*Neville*, at p. 1268.)

As we noted in Discussion, part A.2, *ante*, Stage attested that "[i]n the past several years" predating her March 23, 2022 declaration, she "communicated with other models and influencers that [she] believe[d] worked at one point with Unruly. . . . to gauge whether these models and influencers . . . could testify in [her] support."  Stage further attested that "[i]n certain of those conversations, . . . [she] explained that . . . Unruly made [her] feel uncomfortable, . . . Unruly would not release [her] from [her] contract," and she "was involved in a lawsuit against Unruly."

Although Unruly intimates in its briefing that Stage's declaration testimony is not credible, Unruly does not contest Stage's claim that she spoke with these models and influencers to determine whether they could offer testimony in support of her lawsuit, nor does Unruly direct us to any contrary evidence on this point.  (See also *D.N.*, *supra*, 56 Cal.App.5th at p. 767 [noting that the respondent has a duty to " ' " 'assist the [appellate] court' " ' " in " ' "sustaining the judgment" ' "].)  Instead, Unruly argues that because Stage "admit[ted]" in her declaration that she spoke with "Unruly's other clients to determine whether they 'could testify in [her] support[,]' " Stage's conduct did not "further the

17

public conversation of an issue of public interest," meaning it is not protected by section 425.16, subdivision (e)(4).[12]

We further observe that Stage's declaration is consistent with the legal theories asserted in her complaint. Recall Stage declared that she communicated with these other models and influencers to determine whether they "had experiences with Unruly that were similar to [hers] . . . ." Regarding Stage's experiences with Unruly, she alleged in her complaint that Unruly "pressure[d] [her] to post sexually explicit content" "despite her repeated and unambiguous instructions otherwise," Unruly "displayed clear favoritism towards the women who were willing to pose nude and produce more sexual content," and "Unruly . . . captioned photos of [Stage] with sexually explicit language that insinuated that [she] would send nude private messages to customers and engage in sexual acts with them . . . ." (Boldface & capitalization omitted from the first quotation.) Stage also averred that Unruly's "conduct constitutes a *continuing and ongoing* unlawful, unfair, and fraudulent activity prohibited by the Unfair Competition Law" that "justifies the issuance of an injunction, restitution, and other equitable relief pursuant to Business and Professions Code section 17203." (Italics added.) In connection with her intentional and negligent misrepresentation causes of action, Stage claimed that although Unruly "represented to [her] that [it] would protect her interests," Unruly "sought only to exploit [Stage] for maximum commercial

---

[12] We observe that Unruly's argument has no bearing on whether section 425.16, subdivision (e)(2) applies. (See *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1395 ["Subdivision (e)(1) and (2) of section 425.16 does not require the defendant to show a public issue or issue of public interest."].)

18

gain by forcing her to post sexually explicit content, *as [Unruly] had done with other women.*" (Italics added.) Thus, it appears that Stage had spoken with individuals who were potential witnesses vis-à-vis her intentional misrepresentation, negligent misrepresentation, and unfair competition law causes of action.[13]

Under these circumstances, we conclude that Stage had conversations with models and influencers concerning the subject of her dispute with Unruly and in anticipation of litigation that she seriously considered and contemplated in good faith. Accordingly, Unruly's fifth cross-claim arises from activity protected by section 425.16, subdivision (e)(2).[14]  (See *Neville, supra,* 160 Cal.App.4th at p. 1268; cf. *id.* at pp. 1258–1262, 1267–1270 [holding that subd. (e)(2) applied to a letter drafted by a lawyer on behalf of his client that:  (1) contained the client's allegations against the client's former employee and (2) was sent to potential witnesses prior to the commencement of the client's lawsuit against the former employee].)

---

[13] We express no opinion as to the merits of Stage's causes of action against Unruly.

[14] In Stage's opening brief, she suggests that some of the conversations at issue occurred "after the filing of her lawsuit . . . ."  Her declaration does not clarify, however, whether she spoke to any of the models or influencers in the month between her filing of the complaint and the date she executed her declaration.  In any event, such conversations would likewise fall within the scope of section 425.16, subdivision (e)(2). (See *Neville, supra,* 160 Cal.App.4th at p. 1270 [observing that subd. (e)(2) "has been held to protect statements . . . made 'in connection with' *pending* or anticipated litigation," italics added].)

**B. Unruly Fails To Demonstrate That Section 425.17, Subdivision (c)'s Commercial Speech Exemption Applies**

"The Legislature enacted section 425.17 in response to a 'disturbing abuse' of section 425.16. [Citation.] Subdivision (c) of section 425.17 'enumerate[s] circumstances where the special motion to strike screening mechanism is unavailable.' [Citation.]" (*Demetriades v. Yelp, Inc.* (2014) 228 Cal.App.4th 294, 308 (*Demetriades*).)

Section 425.17, subdivision (c) provides in pertinent part: "Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services . . . arising from any statement or conduct by that person if both of the following conditions exist: [¶] (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services. [¶] (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer . . . ." (§ 425.17, subd. (c).)

Courts refer to section 425.17, subdivision (c) as "the commercial speech exemption to the anti-SLAPP statute . . . ." (See, e.g., *Demetriades*, *supra*, 228 Cal.App.4th at p. 298, fn. omitted.) "Under the two-pronged test of section 425.16, whether a section 425.17 exemption applies is a first prong determination." (*Demetriades*, at p. 308.) "The burden of proof as

20

to the applicability of section 425.17's commercial speech exemption falls on the party seeking the benefit of it . . . . [Citation.] As a statutory exception to section 425.16, section 425.17 must be narrowly construed." (*Neurelis, Inc. v. Aquestive Therapeutics, Inc.* (2021) 71 Cal.App.5th 769, 786.)

Unruly argues that "Stage's statement[s] 'regarding Unruly's business practices' [are] unprotected commercial speech" for the purpose of section 425.17, subdivision (c). (Boldface, underscoring, & some capitalization omitted.) In particular, Unruly asserts Stage "spoke with other clients of Unruly in relation to [Unruly's] business service . . . ." Unruly further alleges that Stage has "creat[ed] her own website that hosts content similar to that of [her OnlyFans account]." It appears Unruly also claims that "[o]n or around the same time that Stage" decided to no longer work with Unruly, "so did [a] friend" of hers who was an Unruly client. Unruly maintains that although it "has not had the benefit of engaging in discovery to determine whether any model from Unruly has also been posted on Stage's website, there is, at least[,] a reasonable suspicion that one or more may."

Although Unruly's argument regarding the commercial speech exemption is not altogether clear, Unruly seems to be arguing that it is a "business competitor" of Stage, given that Unruly complains that Stage made statements to Unruly's clients concerning Unruly's business practices, and not statements regarding her own business enterprise. (See also *Rivera v. First DataBank, Inc.* (2010) 187 Cal.App.4th 709, 717–718 [noting that an essential element of the commercial speech exemption is that " 'the cause of action arises from a statement or conduct by [a] person consisting of representations of fact about *that person's* or

21

*a business competitor's* business operations, goods, or services[,]' " italics added].)  Yet, Unruly supports this theory with only its belief that Stage "may" compete with Unruly by posting its former clients' content on her website.  Because Unruly has not supported its invocation of the commercial speech exemption with evidence demonstrating that Stage and Unruly are business competitors, Unruly is not entitled to the benefit of that exemption.  (See *id.* at p. 718 [holding that evidence must be presented to support a claim that the exemption applies, and that "a mere allegation does not suffice"].)

Further, we do not consider Unruly's assertion on appeal that it lacked the opportunity to conduct discovery relevant to the commercial speech exemption.  Although section 425.16, subdivision (g) provides that "[a]ll discovery proceedings in the action shall be stayed upon the filing of a notice of motion" under the anti-SLAPP statute, it further provides that "[t]he court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision."  (See § 425.16, subd. (g).)  If Unruly believed it needed discovery concerning the potential applicability of section 425.17, subdivision (c), Unruly should have asked the trial court for permission to take such discovery.  Because Unruly does not claim it ever made that request, Unruly cannot now complain of its inability to do so.  (Burke, Cal. Practice Guide: Anti-SLAPP Litigation (The Rutter Group 2022) § 2:63 ["If a plaintiff believes that he or she needs discovery to oppose an anti-SLAPP motion, Civ. Proc. Code 425.16, subd.(g), expressly requires the filing of a noticed motion.  [Citations.]  The plaintiff may not simply oppose the anti-SLAPP motion by insisting that discovery is needed."].)

## C. Unruly Cannot Establish a Probability of Prevailing on Its Fifth Cross-Claim

We now turn to whether there is a probability of Unruly prevailing on its intentional interference with contractual relations cross-claim. (*Litinsky*, *supra*, 40 Cal.App.5th at pp. 979–980; § 425.16, subd. (b)(1).) "To defeat an anti-SLAPP motion" at this stage, Unruly "must overcome any substantive defenses that exist." (See *Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1006.) "Civil Code section 47 provides, in relevant part: 'A privileged publication or broadcast is one made: [¶] . . . [¶] . . . In any . . . judicial proceeding, [and/or] in any other official proceeding authorized by law . . . .' " (*Trinity Risk Management, LLC*, at p. 1006, quoting Civ. Code, § 47, subd. (b).)

"Th[is] privilege has 'an expansive reach' [citation] and applies to claims such as interference with contractual relations [citation], interference with prospective economic relations [citation], and fraud [citation]. It attaches well before the parties enter the courtroom, covering ' "preliminary conversations and interviews" related to contemplated action' and other ' "steps taken prior" to judicial proceedings.' [Citation.] [¶] The litigation privilege bars liability for 'any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action.' [Citation.] . . . Whether the privilege shields [a party's] actions is a question of law subject to our independent review. [Citation.] 'Any doubt about whether the privilege applies is resolved in favor of applying it.' [Citation.]" (*Bowen*, *supra*, 80 Cal.App.5th at p. 165.)

Although the trial court did not reach the second step of the anti-SLAPP analysis, "[w]e have the authority to decide the issue ourselves" and we choose to do so. (See *Santa Clara Waste Water Co. v. County of Ventura Environmental Health Division* (2017) 17 Cal.App.5th 1082, 1090–1091.) Even though Stage asserted the litigation privilege in her opening brief, Unruly did not respond to that contention in its appellate brief, let alone claim that it would be prejudiced if we addressed the issue in the first instance. Accordingly, we now address that issue.

All four elements of the litigation privilege apply to Stage's statements. As we explained in Discussion, part A.3, *ante*, Stage communicated with persons she believed had been Unruly models and influencers to determine whether they could offer testimony supporting her suit against Unruly. Put differently, Unruly's cross-claim seeks to impose liability on Stage for her " ' "preliminary conversations and interviews" related to contemplated action' . . . . [Citation.]" (See *Bowen*, *supra*, 80 Cal.App.5th at p. 165.) Consequently, Stage is " 'absolutely immune from tort liability [in accordance with] the [litigation] privilege' set forth in Civil Code section 47, subdivision (b)." (See *Bowen*, at p. 165, first bracketed insertion added; see also *Bonni v. St. Joseph Health System* (2022) 83 Cal.App.5th 288, 301 [observing that "[t]here is some overlap between the litigation privilege and the anti-SLAPP statute"].)

## D. Stage Abandoned Her Appeal of the Denial of Her Motion To Strike Unruly's First and Second Cross-Claims

In addition to Unruly's fifth cross-claim, Stage moved to strike Unruly's first cross-claim for breach of contract and its second for breach of implied covenant of good faith and fair

dealing. In her appellate briefing, Stage does not argue the trial court erred in denying her motion as to Unruly's first and second cross-claims. Accordingly, Stage has abandoned her appeal as to the trial court's denial of her anti-SLAPP challenge to these cross-claims. (See *Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 ["[Our review] is limited to issues which have been adequately raised and supported in [an appellant's] brief. [Citations.] Issues not raised in an appellant's brief are deemed waived or abandoned."].)

## DISPOSITION

We reverse the trial court's April 19, 2022 order insofar as the trial court denied appellant Sarah Stage's special motion to strike respondent Unruly Agency, LLC's (Unruly's) fifth cross-claim. We affirm the trial court's order to the extent the court denied Stage's motion to strike Unruly's first and second cross-claims. The matter is remanded to the trial court with instructions to (1) enter a new order granting Stage's motion to strike Unruly's fifth cross-claim, and (2) conduct further proceedings consistent with this opinion. The parties shall bear their own costs on appeal.

NOT TO BE PUBLISHED.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.                    CHANEY, J.


25